**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

SHIRLEY FAWCETT,

 *Plaintiff*

V.

UNITED STATES OF AMERICA,

 *Defendant*

## COMPLAINT

NOW COMES the Plaintiff SHIRLEY FAWCETT, by and through the undersigned counsel, Alexis Chardon of Garmey Law, and complains against the Defendants, the United States of America, as follows:

## PARTIES

1. Plaintiff Shirley Fawcett is an elderly resident of the town of Portland, Maine.

2. The United States of America is the proper defendant in this case under the Federal Tort Claims Act U.S.C. § 2671 *et seq.* The United States Government operates and controls the agencies which committed acts of negligence causing Plaintiff's injury, The Social Security Administration and The General Services Administration.

## JURISDICTION

3.      Jurisdiction is proper in this Court because this claim arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*., and therefore presents a federal question. *See* 28 U.S.C. § 133; 28 U.S.C. 1346(b)(1).

## NATURE OF THE CASE

4.      On May 3, 2023, Plaintiff Shirley Fawcett had an appointment with the Social Security Administration ("SSA"), an agency of the Defendant, to replace a social security card.

5.      Ms. Fawcett was able to walk independently, but was elderly. She relied on handrails when using staircases.

6.      Just days earlier, the Social Security Administration had recently moved into a new location in the Custom House Building.

7.      The Custom House Building is owned and operated by General Services Administration ("GSA"), which is also an agency of the federal government.

8.      The new Social Security Administration was located on the Commercial Street side of the building, with a single entrance near the intersection of Pearl and Commercial Streets.

9.      The GSA has adopted mandatory Facilities Standards for the Public Buildings Service which direct agents to prioritize state and local building codes to the maximum extent feasible.

10.     GSA's mandatory policies also require that all federal buildings be made accessible without the use of special facilities for persons with disabilities.

11.     GSA's mandatory policies require that building planners, architects, and engineers follow "the most stringent" safety and accessibility requirements between local standards and the Architectural Barriers Act Accessibility Standards.

12.     Moreover, for any design or construction work performed by GSA on federal buildings, GSA has adopted the technical requirements of the nationally recognized safety codes and standards.

13.     The Commercial Street entrance has four granite stairs and a set of double doors in front of a small landing.

14.     The GSA did not comply with its own policies when retrofitting and maintaining the Commercial Street entrance, including because it had no handrails in violation of applicable state and local ordinances and the Life Safety Code:



*The Commercial Street Entrance*

15.     In contrast, the GSA did comply with its own policies with respect to the building's Fore Street Entrance, where it endeavored to conform to applicable safety codes and standards to the maximum extent feasible, adding a handrail:



*The Fore Street Entrance*

16.     It was feasible for the GSA to have installed handrails on the Commercial Street entrance. The granite stairs of this entrance show evidence that similar installations have been made in the past.

17.     Because no parking was available, Ms. Fawcett's daughter, Queenie Thayer, dropped her off for her appointment and continued to look for a parking space.

18.     The day was wet; it had been raining.

19.     After finishing her appointment with SSA, Ms. Fawcett exited the building through the double doors.

20.     A security guard held the door for her, but did not help her down the stairs.

21.     Ms. Fawcett noticed that there was no handrail, but felt she needed one. It was her practice to always use a handrail to assist herself.

22.     She began to proceed down the stairs as carefully as possible.

23.     The second stair had become slippery with water.

24.     Shirley slipped on the stair and was unable to maintain her balance due to the lack of a handrail. She fell down the stairs and onto the hard pavement.

25.     Shirley sustained a significant knee injury, described as hemarthrosis of the right knee with patellar subluxation and injury to the medial aspect of the patellar retinaculum, and injury to the right wrist. She also developed persistent urinary tract infections because of the placement of a urinary catheter due to the knee injury. She had multiple hospital admissions and multiple rehabilitation facility admissions as a result of the injuries.

## COUNT 1
## (NEGLIGENCE)

26.     Plaintiff repeats and realleges the allegations in the above paragraphs as if set forth fully herein.

27.     Defendant owed a duty to Plaintiff to provide reasonably safe entrance to its facilities.

28.     Defendant breached this duty to Plaintiff, including but not only by:

   a.   Failing to install a handrail at the Commercial Street entrance, which would have been feasible and practicable;

   b.   In retrofitting and maintaining the Custom House, failing to comply with GSA's policies which prioritize compliance with state and local safety codes and federal accessibility requirements to the maximum

5

extent feasible;

c.   Failing to make efforts to comply with state and local safety and accessibility codes and ordinances;

d.   Failing to ensure the path of egress leading from the SSA was safe for use;

e.   Failing to ensure the path was maintained, including installing a handrail for the accessibility of attendees;

f.   Failing to ensure there were signs that stated alternatives to the dangerous path of egress;

g.   Failing to provide for entrance to the SSA office through the Fore Street entrance, where there was a handrail;

h.   Failing to direct invitees such as Ms. Fawcett to a safer way to enter and exit the building.

29.     As a result of Defendant's negligent, careless and/or reckless actions, Plaintiff has suffered damages including past and future physical injuries, pain, and mental anguish; she has incurred and will continue to incur medical expenses.

**WHEREFORE,** Plaintiff demands judgment against the Defendant for damages which this Court deems reasonable together with interest and costs.

**DATES** at Portland, Maine this 1st day of July, 2024.

*/s/ Alexis Chardon*
Alexis G. Chardon, Esq. Bar No. 5932
*Attorney for Plaintiff*
GARMEY LAW
482 Congress Street, Suite 402
Portland, ME 04101
(207) 899-4644 | (207) 541-9242 (fax)
(207) 835-2060 (direct dial)
achardon@garmeylaw.com

6